## IN THE CIRCUIT COURT FOR CALVERT COUNTY, MARYLAND

MICHAEL BURDISH
635 Mermaid Court
Lusby, Maryland 20657

              Plaintiff

   v.

BOARD OF COUNTY COMMISSIONERS
OF CALVERT COUNTY, MARYLAND

SERVE:  John B. Norris, III
175 Main Street.
Prince Frederick, Maryland 20678

             Defendant.

C-04-CV-23-000239

Case No. _____

Jury Trial Demanded

### COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Michael Burdish ("Plaintiff"), through the undersigned counsel, sues Defendant the Board of County Commissioners of Calvert County, Maryland ("Defendant"), for cause, claims damages, and in support thereof states as follows:

### PARTIES

1.      Plaintiff is an adult individual residing in Calvert County, Maryland.

2.      Defendant oversees and directs the actions of Calvert County's Department of Parks and Recreation ("CCPR"), including, but not limited to, personnel actions, and Defendant uses County resources and facilities to provide administrative and other services.

3.      During the period of about June 7, 2021, through July 19, 2022, Plaintiff was a Concessions Manager for CCPR, performing job duties for Defendant's primary benefit within Calvert County, Maryland.

1

## JURISDICTION AND VENUE

4.      Pursuant to the foregoing, Venue and Jurisdiction for the adjudication of Plaintiff's herein alleged claims for relief against Defendant are proper in the Circuit Court for Calvert County, Maryland.

5.      The amount in controversy as set forth in this Complaint exceed $75,000.00 in an amount to be determined by the jury.

## NOTICE

6.      On February 15, 2023, Plaintiff served a Local Government Tort Claims Act ("LGTCA") Notice in compliance with Maryland Code, Cts. & Jud. Proc., Section 5-304 regarding Plaintiff's claims described herein.

## FACTS COMMON TO ALL COUNTS

7.      On or about June 7, 2021, Plaintiff commenced his employment with Defendant as its Concessions Manager.

8.      Pursuant to the express language of Defendant's signed offer letter that it issued to Plaintiff that Plaintiff accepted upon his hiring, during the period of Plaintiff's employment as Defendant's Concessions Manager, Plaintiff was a non-exempt employee eligible for overtime compensation.

9.      During Plaintiff's employment period with Defendant, Plaintiff reported directly to four different individuals:  Robin Jackson, for the period of about June 2021; Bob Branham, for the period of about July 2021, until around October 2021; Luis Santiago, for the period of about October 2021, until about February 2022; Bob Branham, for the period of about February 2022, until about April 2022; and Kristin Perry, from about April 2022, until the date Defendant terminated Plaintiff's employment in July 2022.

2

10.     At the time of Plaintiff commenced his employment with Defendant, Plaintiff's employment duties and responsibilities as Defendant's Concessions Manager included managing and operating the park concessions at the Breezy Point, Cove Point, and King's Landing locations.

11.     Shortly thereafter, Defendant assigned Plaintiff the additional responsibility relating to Defendant's Mobile Vendor Program.  This program was a permitting process that allowed food trucks to vend at Calvert County's parks.

12.     In or about August 2021, Defendant assigned Plaintiff the additional task of managing the concessions at Chesapeake Hills Golf Course, which is open all year.  At the Chesapeake Hills Golf Course, Plaintiff was responsible for managing the staff; operating the concessions; ordering food, beverage, liquor, and supplies; and managing events at the golf course.

13.     In June 2021, when Plaintiff began his period of employment, Ms. Jackson, Plaintiff's supervisor, recognized that Plaintiff's position required Plaintiff to work more than thirty-five (35) hours scheduled and allotted by Defendant per week, and Ms. Jackson regularly approved Plaintiff for overtime compensation for the additional hours Plaintiff worked exceeding thirty-five (35) hours per week.

14.     After Ms. Jackson resigned in around July 2021, and continuing until the termination of Plaintiff's employment, Defendant, through Plaintiff's direct supervisors Mr. Branham, Mr. Santiago, and Ms. Perry, dictated with emphasis to Plaintiff was required to fulfil all of his assigned or required work duties as Concessions Manager but that Defendant will not approve Plaintiff's requests for payment for compensable work exceeding thirty-five (35) hours per week.

15.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, and that no matter the number of hours Plaintiff worked per week exceeding thirty-five (35), Defendant refused to permit Plaintiff to report, claim, or otherwise seek wages for compensable work exceeding seven (7) compensable hours per day, five (5) days per week, for a total of thirty-five (35) compensable work hours per week.

16.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, Plaintiff customarily worked between forty (40) to fifty (50) or more hours per week.

17.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, Defendant had knowledge of and suffered or permitted Plaintiff to work eight (8) to ten (10) or more hours per day and about forty (40) to fifty (50) or more hours per week for Defendant's primary benefit.

18.     During the period of about July 2021, and continuing until about mid-June 2022, Plaintiff, fearing retaliation for not complying with Defendant's thirty-five (35) compensable hour limit directive, Plaintiff customarily submitted time cards to Defendant for payroll processing falsely denoting seven (7) compensable work hours per day and a one (1) non-compensable daily meal break, five (5) days per week, for a total of thirty-five (35) compensable work hours per week.

19.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, Defendant had knowledge of and suffered or permitted Plaintiff to work eight (8) to ten (10) or more hours per day and about forty (40) to fifty (50) or more hours per week for Defendant's primary benefit, for which Defendant paid Plaintiff wages at Plaintiff's regular hourly rate for only thirty-five (35) hours per week.

4

20.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, Defendant had knowledge of and suffered or permitted Plaintiff to work eight (8) to ten (10) or more hours per day and about forty (40) to fifty (50) or more hours per week for Defendant's primary benefit, for which Defendant knowingly and intentionally failed to pay Plaintiff earned wages at Plaintiff's regular hourly rate for five (5) weekly compensable work hours Plaintiff performed between thirty-five (35) to forty (40) hours per week.

21.     During the period of about July 2021, and continuing until Defendant's termination of Plaintiff's employment, Defendant had knowledge of and suffered or permitted Plaintiff to work eight (8) to ten (10) or more hours per day and about forty (40) to fifty (50) or more hours per week for Defendant's primary benefit, for which Defendant knowingly and intentionally failed to pay Plaintiff earned wages at the required overtime premium rate of one-and-one-half times Plaintiff's regular hourly rate for about five (5) to ten (10) or more weekly compensable overtime work hours Plaintiff performed between forty (40) to fifty (50) or more hours per week.

22.     During the final two pay periods of Plaintiff's employment with Defendant in late June and early to mid-July 2022, Plaintiff submitted timesheets accurately reflecting the compensable hours Plaintiff worked during the payroll periods, including compensable work of eight (8) to ten (10) or more hours per day and overtime exceeding forty (40) compensable hours per week.

5

23.     In late June 2022, in response to Plaintiff's submission of timesheets reflecting the compensable hours Plaintiff worked during the payroll periods, including work of eight (8) to ten (10) or more hours per day and overtime exceeding forty (40) compensable hours per week, Defendant unilaterally altered and falsified Plaintiff's timecards to reflect only thirty-five (35) compensable hours per week and, thereafter, paid Plaintiff wages only for thirty-five (35) hours per week as reflected on Defendant's altered and falsified timesheets.

24.     In July 2022, in response to Plaintiff's submission of timesheets reflecting the compensable hours Plaintiff worked during the payroll periods, including work of eight (8) to ten (10) or more hours per day and overtime exceeding forty (40) compensable hours per week, Defendant sent Plaintiff messages encouraging Plaintiff to alter and falsify his timecards to reflect only thirty-five (35) compensable hours per week, and resubmit the altered and falsified timesheets to Defendant for payment of wages.

25.     In July 2022, Plaintiff notified Defendant that he would not alter or falsify his timecards to reflect only seven (7) compensable work hours per day and thirty-five (35) compensable hours per week but, instead, would submit and request payment for all compensable hours worked including work of eight (8) to ten (10) or more hours per day and overtime exceeding forty (40) compensable hours per week and that this submission was truthful and correct and that Defendant should and is required to pay Plaintiff for all hours reflected on Plaintiff's time cards, including overtime wages at the required overtime rate.

26.     In response and in direct retaliation for Plaintiff's July 2022, submission of accurate timecards reflecting overtime worked over forty (40) hours per week and Plaintiff's refusal succumb to Defendant's demand to alter or falsify his timecards to exclude compensable overtime hours, on July 19, 2022, Shannon Nazzal, Defendant's Director, presented Plaintiff with a notice terminating Plaintiff's employment based on falsely asserted cause to retaliate against Plaintiff and to falsely manufacture a basis for Defendant to deny Plaintiff Unemployment Insurance and to withhold payment of Plaintiff's earned and accrued vacation and sick and/or personal leave days in the amount of approximately Six Thousand Dollars ($6,000.00).

## COUNT I
### Breach of Contract

27.     Plaintiff incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

28.     On May 25, 2021, Defendant presented Plaintiff with a signed offer letter for the merit full-time position as Defendant's Concessions Manager.   Pursuant to the offer letter, Plaintiff's position was a non-exempt position, meaning, for his position, Plaintiff earned and was entitled to overtime compensation in the form of payment or compensatory leave, when he worked more than thirty-five (35) hours per week and affirming that Plaintiff was entitled to compensation in the form of accrued sick leave, annual/vacation leave, and personal leave, earned and accrued during the period of Plaintiff's employment and payable to Plaintiff, if unused, at the conclusion of Plaintiff's period of employment.

29.     As alleged and described above, during the Plaintiff's period of employment, Defendant failed to pay Plaintiff earned overtime compensation for compensable work performed for Defendant's primary benefit exceeding thirty-five (35) hours per week.

7

30.     Further, as alleged above, upon Defendant terminating Plaintiff's employment, Defendant failed to pay Plaintiff his earned and accrued sick leave, annual/vacation leave, and personal leave, in an amount of approximately Six Thousand Dollars ($6,000.00).

31.     Defendant's failure to pay Plaintiff earned wages for compensable work performed for Defendant's benefit exceeding thirty-five (35) hours per week and failure to pay Plaintiff his earned and accrued sick leave, annual/vacation leave, and personal leave, in an amount of approximately Six Thousand Dollars ($6,000.00) constitutes a material breach of Defendant's contractual obligations and duties to Plaintiff and caused Plaintiff to suffer damages in the sum of his earned and unpaid wages for compensable work performed over thirty-five (35) hours per week and approximately Six Thousand Dollars ($6,000.00) in earned and accrued sick leave, annual/vacation leave, and personal leave.

WHEREFORE, the Plaintiff respectfully demands judgment against Defendant for monetary damages in an amount to be determined at trial, plus interest, the costs of this action, and such further and additional relief as the nature of the case may require and which this Court or a jury shall deem just and proper under the circumstances presented herein.

### COUNT II
**Violation of the Fair Labor Standards Act**
**Failure to Pay Overtime Wages**

32.     Plaintiff incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

33.     During the period of Plaintiff's employment, Defendant was Plaintiff's employer subject to the requirements of the Federal Fair Labor Standards Act ("FLSA").

34.     During the period of Plaintiff's employment, the FLSA required Defendant to pay Plaintiff overtime wages at the premium rate of one-and-one-half times Plaintiff's regular hourly rate for overtime Plaintiff worked over forty (40) hours per week.

35.     During the period of Plaintiff's employment, Defendant had actual knowledge the FLSA required Defendant to pay Plaintiff overtime wages at the premium rate of one-and-one-half times Plaintiff's regular hourly rate for overtime Plaintiff worked over forty (40) hours per week.

36.     As alleged above, during the period of Plaintiff's employment, Plaintiff regularly and customarily worked forty (40) to fifty (50) or more hours per week.

37.     As alleged above, during the period of Plaintiff's employment, Defendant had knowledge of and/or suffered or permitted Plaintiff to customarily worked forty (40) to fifty (50) or more hours per week.

38.     As alleged above, Defendant violated the FLSA overtime compensation mandate because, instead of paying Plaintiff at the required time-and-one-half premium overtime rate for overtime worked over forty (40) hours per week, Defendant regularly and customarily paid Plaintiff no wages at all for overtime worked over forty (40) hours per week.

39.     Defendant's failure to pay Plaintiff overtime premium wages as required by the FLSA and corresponding violation of the FLSA overtime compensation mandate was knowing, willful or, at least, reckless, and was not the product of good faith on the part of Defendant.

WHEREFORE, the Plaintiff respectfully demands judgment against Defendant for monetary damages in an amount to be determined at trial, statutory liquidated damages in an equal amount, plus interest, the costs of this action, attorneys' fees, and such further and additional relief as the nature of the case may require and which this Court or a jury shall deem just and proper under the circumstances presented herein.

9

## COUNT III
### Violation of the Fair Labor Standards Act
### Retaliation

40.      Plaintiff incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

41.      During the period of Plaintiff's employment, Defendant was Plaintiff's employer subject to the requirements of the FLSA.

42.      During the period of Plaintiff's employment, the FLSA contained an express statutory protection against retaliation prohibiting Defendant from discharging or in any manner discriminating Plaintiff "respect to his or her compensation, terms, conditions, or other privileges of employment because [Plaintiff] . . . has . . . provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of [the FLSA] (or an amendment made by this title) . . . , or, objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee . . . reasonably believed to be in violation of any provision of [the FLSA] (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment).  29 U.S.C. § 218c.

43.      During the final two pay periods of Plaintiff's employment with Defendant in late June and early to mid-July 2022, Plaintiff submitted timesheets accurately reflecting the compensable hours Plaintiff worked during the payroll periods, including overtime exceeding forty (40) compensable hours per week.

44.     In late June 2022, in response to Plaintiff's submission of timesheets reflecting the compensable hours Plaintiff worked during the payroll periods, including overtime exceeding forty (40) compensable hours per week, Defendant unilaterally altered and falsified Plaintiff's timecards to reflect only thirty-five (35) compensable hours per week and, thereafter, paid Plaintiff wages only for thirty-five (35) hours per week as reflected on Defendant's altered and falsified timesheets.

45.     In July 2022, in response to Plaintiff's submission of timesheets reflecting the compensable hours Plaintiff worked during the payroll periods, including overtime exceeding forty (40) compensable hours per week, Defendant sent Plaintiff messages encouraging Plaintiff to alter and falsify his timecards to reflect only thirty-five (35) compensable hours per week, and resubmit the altered and falsified timesheets to Defendant for payment of wages.

46.     In July 2022, Plaintiff notified Defendant that he would not alter or falsify his timecards to reflect only thirty-five (35) compensable hours per week but, instead, that his time card submission including overtime exceeding forty (40) compensable hours per week was truthful and correct and that Defendant should and is required to pay Plaintiff for all hours reflected on Plaintiff's time cards, including overtime wages at the required overtime rate.

47.     In response and in direct retaliation for Plaintiff's July 2022, submission of accurate timecards reflecting overtime worked over forty (40) hours per week and Plaintiff's refusal succumb to Defendant's demand to alter or falsify his timecards to exclude compensable overtime hours, on July 19, 2022, Shannon Nazzal, Defendant's Director, presented Plaintiff with a notice terminating Plaintiff's employment for cause based on demonstrably false facts and circumstances to retaliate against Plaintiff and to falsely manufacture a basis for Defendant to deny Plaintiff Unemployment Insurance and to withhold payment of Plaintiff's earned and accrued

vacation and sick and/or personal leave days in the amount of approximately Six Thousand Dollars ($6,000.00).

48.     Plaintiff's late June and early to mid-July 2022, submissions of timecards accurately reflecting compensable overtime worked by Plaintiff for Defendant's benefit exceeding forty (40) hours per week and his corresponding request for payment of FLSA required overtime wages for the same constitutes a protected activity under the FLSA.

49.     Plaintiff's late June and early to mid-July 2022, refusal succumb to Defendant's demand to alter or falsify his timecards to exclude compensable overtime hours Plaintiff performed for Defendant's primary benefit and, instead, to request payment of FLSA required overtime wages for the same constitutes a protected activity under the FLSA.

50.     Defendant engaged unlawful retaliation against Plaintiff in violation of the FLSA anti-retaliation protections on July 19, 2022, when Shannon Nazzal, Defendant's Director, presented Plaintiff with a notice terminating Plaintiff's employment based on falsely asserted cause to retaliate against Plaintiff and to falsely manufacture a basis for Defendant to deny Plaintiff Unemployment Insurance and to withhold payment of Plaintiff's earned and accrued vacation and sick and/or personal leave days in the amount of approximately Six Thousand Dollars ($6,000.00).

51.     Defendant's retaliatory intent arising from Plaintiff engaging in FLSA protected activities in late June and early to mid-July 2022, was the motivating, direct, and proximate cause of Defendant's act on July 19, 2022, to present Plaintiff with a notice terminating Plaintiff's employment based on falsely asserted cause to retaliate against Plaintiff and to falsely manufacture a basis for Defendant to deny Plaintiff Unemployment Insurance and to withhold payment of Plaintiff's earned and accrued vacation and sick and/or personal leave days in the amount of approximately Six Thousand Dollars ($6,000.00).

52.    Defendant's act of unlawful retaliation against Plaintiff in violation of the FLSA anti-retaliation protections have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost back and future wages, benefits, and earning opportunities.

WHEREFORE, the Plaintiff respectfully demands judgment against Defendant for monetary damages *exceeding* $75,000.00 in an amount to be determined at trial, plus interest, the costs of this action, attorneys' fees, and such further and additional relief as the nature of the case may require and which this Court or a jury shall deem just and proper under the circumstances presented herein.

### JURY DEMAND

Plaintiff demands a jury trial as to all issues of fact and counts so triable.

Dated:  May 4, 2023                                    Respectfully submitted,


_/s/ Gregg C. Greenberg_
Gregg C. Greenberg, Esquire
(Client Protection Fund #: 0712110314)
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff*